## McCORMICK HARVESTING MACHINE COMPANY, Appellant, v. JOSEPH C. WILLIAMS et al., Respondents.

**St. Louis Court of Appeals, February 27, 1900.**

1. **Promissory Note: WITHOUT CONSIDERATION: ISSUES FAIRLY SUBMITTED: INSTRUCTIONS.** The court told the jury that if they found that defendants were the local agents of plaintiff, and that they gave the note sued on for the machine, afterwards bargained to Samuel Max by another of plaintiff's agents, and that the machine was taken out of the possession of defendants in pur-

suance of the sale of it to Max, the jury should find for the defendants. Under this instruction the jury found the issues for defendants: Held, that as this and other instructions fairly submitted the issues, and there being substantial evidence to support the verdict, the judgment should be affirmed.

2. ——: ——: ——: VERDICT SUSTAINED. A verdict, with proper instructions, supported by substantial evidence will be sustained.

Appeal from the St. Francois Circuit Court.—*Hon. James D. Fox,* Judge.

AFFIRMED.

*Benj. H. Marbury* for appellant.

(1) The finding of the jury was against the weight of evidence, the theory of the case by plaintiff, and against the law of the case as declared by the court; the court, therefore, erred in refusing to set aside the verdict of the jury. Iron Mountain Bank v. Armstrong, 92 Mo. 279; Bank v. Wood, 124 Mo. 76; Kreis v. Railroad, 131 Mo. 544; Lawson v. Mills, 130 Mo. 172; Wight v. Railroad, 20 Mo. App. 484; Whitsett v. Ransom, 79 Mo. 258; Reid v. Life Ins. Co., 58 Mo. 429; Rickroad v. Martin, 43 Mo. App. 603; Remmler v. Shenuit, 15 Mo. App. 195. (2) In the case of Rickroad v. Martin, *supra,* Judge Smith quotes the following from Graham & Waterman on New Trials: "There is one rule of universal application and controlling efficacy. It is that, where substantive justice has been done, no trial will be granted. The discretion of courts consists in deciding this fundamental question. A judge then should never deny a motion of this kind (new trial) unless he is satisfied that the merits of the case have been fully and fairly tested and determined." (3) The action of the jury in this case shows beyond a doubt that it was moved by prejudice, partiality and favoritism in the finding of its verdict against the plaintiff; and for such cause

when evident, the appellate courts have never failed to reverse a case.   The following is the language used on such occasions by the courts of last resort: "The result obtained by the verdict must therefore be ascribed to prejudice, passion or partiality, and not to calm weighing of the facts in evidence, which should always characterize the deliberations of a jury, and on such occasions this court does not hesitate to interfere, as is attested by the decisions."   State v. Primm, 98 Mo. 373; Spohn v. Railroad, 87 Mo. 74; Whitsett v. Ransom, 79 Mo. 258; Baker v. Stonebroker, 36 Mo. 345; Price v. Evans, 49 Mo. 396; Garrett v. Greenwall, 92 Mo. 120.

*George M. Wilson* for respondents.

Ried v. Insurance Company, 58 Mo. 422; Jefferson v. Life Association, 69 Mo. App. 134; Kuenzel v. Stevens, 73 Mo. App. 16; Bank v. Wood, 124 Mo. 72; Parker v. Cassingham, 130 Mo. 348; Thompson v. Railroad, 140 Mo. 144; Cross v. Railroad, 141 Mo. 144.   The verdict of the jury in this case can not be ascribed to prejudice, partiality or passion, as the case was fairly tried and all the issues submitted to the jury.   Dowd v. Air Brake Co., 132 Mo. 581; Weinberg v. Street Ry. Co., 139 Mo. 289; Leahy v. Davis, 121 Mo. 234; Spohn v. Mo. Pacific Ry. Co., 87 Mo. 84.   A judgment will not be reversed except for errors materially affecting the case.   Boggess v. Railroad, 118 Mo. 328.

BLAND, P. J.—The suit is on the following promissory note:
"$105.50.

"Piedmont, Mo., 10—9, 1895.

"On or before the first day of September, 1896, for value received, I promise to pay to the McCormick Harvesting Machine Company (a corporation organized and existing under

the laws of the state of Illinois, and having its chief office and place of business in the city of Chicago, county of Cook, state of Illinois) or order, at Piedmont, Missouri, one hundred and five and 50-100 dollars, with interest at eight per cent per annum thereafter until paid.

"(Signed)                                   Williams & Co."

The evidence is that defendants were a mercantile partnership doing business at Piedmont, Mo.; that Williams was a farmer residing in St. Francois county, and that the business of the partnership was managed and carried on by Hicks; that in March, 1895, the partnership made a contract with plaintiff to sell farming machinery of plaintiff's make on commission. Under this agreement plaintiff shipped to defendants at Piedmont one sample self-binder, and some mowing machines. The controversy arises out of the disposition made of the self-binder. Defendant Williams testified that he had purchased of the partnership two machines for his own use, and that on the ninth of October, 1895, he called at the office of the plaintiff in East St. Louis to settle for the two machines he had purchased for his own use; that when this was done, Mr. Towne, the general agent of the plaintiff in charge at East St. Louis, asked him to settle for the self-binder also; that at the time he did not know whether the machine had been sold or not, and supposing that it had been sold by Hicks, he signed the note in suit. On the part of the defendant the evidence tends to prove that after the harvesting season of 1895 was over the sample machine and three mowing machines that were consigned to defendant were unsold; that W. J. Russell, a traveling or field agent of plaintiff, sold two of the mowing machines in Iron county (territory outside of defendants' agency) then came to Piedmont to see about the binder and inquired where he might find a purchaser for this machine, and was told by an employee of the defendants that he might be able to sell it to Samuel Max, if he would put the price

down; that Russell hunted up Max and agreed with Max that if he would go to Piedmont and haul the machine to his place and keep it in his barn until the harvesting season of the following year, the company would send out a man to put the binder together and start it; and if it did satisfactory work Max could then take the machine for $100 under an 1896 contract. Max agreed to this; Russell then returned to Piedmont, took the machine apart, so that it could be loaded in a wagon. In a few days afterwards Max appeared with his team, loaded the machine in his wagon, hauled it out to his farm, and that it was in his barn at the date of trial; that no agent of the plaintiff had appeared to put the machine together and start it. Russell, for the plaintiff testified that he sold the machine to Max for the defendants, and that in the arrangement he made with Max about the machine, he was the sole agent of the defendants and acted under orders and on instructions of Hicks. Hicks denied this testimony of Russell, and stated that Russell was representing the plaintiff and came to Piedmont to close up the years' business with his firm, and that he turned the binder over to him, and he took possession of it, and that Max hauled the machine away. Settlement sheets signed by defendants, in which this machine is embraced, were introduced in evidence by the defendants. These were explained by defendants in a manner not inconsistent with their testimony as to the disposition Hicks stated had been made of the self-binder.

For plaintiff the court instructed the jury as follows:

"I.   If you find and believe from the evidence that Williams & Co. entered into an agency contract with the McCormick Harvesting Machine Co. on the fifteenth of March, 1895, by which the said Williams & Co. were held responsible for the sample machine, unless otherwise agreed upon by the said machine company, and that the said machine company did not agree to the sale of the said sample machine to

Samuel Max, or any other person or persons then you will find the issue for the plaintiff."

"II.    If you find and believe from the evidence that W. J. Russell was, under the agency contract, while within the territory of Williams & Co., their sub-agent, and working under their authority, and as such negotiated the sale of the said sample machine for the said Williams & Co., then you will find the issues for the plaintiff."

The court gave the following instruction for defendant:

"The court instructs the jury that if they shall believe and find from the evidence in this cause, that the defendant were the local agents of the plaintiff for the sale of its harvesting machines at Piedmont, Missouri, and that as such agents they received from plaintiff such harvesting machines, and, among said machines, the machine bargained to be sold to the witness, Samuel Max; that the note sued on in this cause was given by the defendants to plaintiff in payment for said machine; and further find from the evidence in this cause that said machine was sold or bargained to be sold to the said Samuel Max by another agent of plaintiff's and taken out of the possession of these defendants by the said Samuel Max, so that these defendants no longer had the possession or control of the same, the jury will find the issues in this cause for the defendants."

The jury returned a verdict for the defendants, and judgment was rendered accordingly.    Plaintiff appealed.

The instructions properly presented the law of the case on the evidence.    There is substantial evidence in support of the verdict, and nothing remains for us to do, but to affirm the judgment, which is accordingly done.    All concur.